```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| VALERIE FULTON-WALKER and<br>CRISTAL SWIFT | : <br>: <br>: | CIVIL ACTION |
| V. | : <br>: | |
| SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY | : <br>: | NO. 22-224 |

MEMORANDUM

Bartle, J.                                              February 9, 2023

Plaintiffs Valerie Fulton-Walker and Cristal Swift bring this action against their employer Southeastern Pennsylvania Transportation Authority ("SEPTA") under: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000(e)-2(a), 3(a); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 612; the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955. Plaintiffs, both African American women over the age of 40, allege that SEPTA discriminated against them, paid them unequally, and failed to promote them due to their race, sex, and age.[1] Before the court is the motion of the defendant

---

1. In their complaint, plaintiffs raised disparate treatment claims. They raised, for the first time, disparate impact claims in their brief in opposition to defendant's motion for summary judgment. These claims will not be considered here because plaintiffs are precluded from raising disparate impact claims for the first time during summary judgment. See, e.g., Spence v. City of Philadelphia, 147 F. App'x 289, 292 (3d Cir. 2005); Summy-Long v. Pennsylvania State Univ., 715 F. App'x 179, 182 (3d Cir. 2017).

for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. The nonmoving party cannot "rely merely upon bare assertions, conclusory allegations or suspicions." Fireman's Ins. Co. of Newark, N. J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

The following facts are taken in the light most favorable to the plaintiffs as the nonmoving parties. As outlined in its Compensation Manual, SEPTA has instituted salary grades. Employees within the same salary grade can earn different salaries depending on their job responsibilities, experience, and tenure, among other characteristics. A single salary grade can range with a differential of $30,000 to $40,000. Different salary grades may have overlapping ranges, allowing for some employees in a lower salary grade to be paid more than employees in a higher salary grade.

Department Managers or Directors award annual merit-based raises to employees in accordance with guidelines that are proposed by SEPTA's Compensation & Human Resources Information Systems ("HRIS") Department and approved by SEPTA's General Manager. Outside from the merit raise process, an employee can only receive a raise through: (1) a position upgrade; (2) a promotion; (3) a vertical equity adjustment; or (4) a special adjustment. These four methods all require review or approval by the Compensation & HRIS Department, the Finance Department, the Department Manager, and the Division Head.

Plaintiff Fulton-Walker was hired by SEPTA on July 1, 1988 and was promoted to her current position as a grade 41 Claims Administration Manager in July 2015.  She is designated as a "single incumbent" by SEPTA because she is the only employee in this position.  In this role, she is responsible for handling property damage claims and not personal injury claims.  She also supervises some employees and handles some administrative tasks.  Unlike Fulton-Walker, the other claims managers in her department are responsible for handling personal injury claims and are in grade 42.

Fulton-Walker alleges that she had expressed concerns about her work environment, pay, and the restructuring of her department, which resulted in units being removed from her management, from 2012 to 2016.  She twice submitted formal complaints regarding her performance evaluations.  She filed a complaint to her supervisor, Frank Cornely, in 2016 about his evaluation that her "refusal to accept" changes in the department "clouded her judgment."  In October 2017, she submitted a complaint to SEPTA's Equal Employment Opportunity ("EEO"), Affirmative Action, and Employee Relations Department about her 2017 performance evaluation, which she found to be "personal in nature, offensive and retaliatory."

In September 2018, Fulton-Walker contacted Jacqueline Hopkins--the then-Director of SEPTA's EEO Affirmative Action,

and Employee Relations Department--about being paid less than her colleagues.  Carol O'Neal, an affirmative action officer, conducted the review and found that Fulton-Walker's salary was approximately 17 percent lower than the midpoint for her salary grade, while the four grade 28 claims supervisors and three grade 42 claims managers in the claims department, who are all white men, were approximately 2-4 percent below their grade's midpoint.  O'Neal recommended that Fulton-Walker's salary be increased, but she later conceded that she was not authorized by the procedures outlined in the Compensation Manual to give this recommendation.  The Compensation Department declined to increase Fulton-Walker's salary.

On December 9, 2019, Fulton-Walker filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") raising claims of race, gender, and age discrimination. She received a right to sue notice for her EEOC charge on October 28, 2021 and filed this lawsuit on December 27, 2021. On February 11, 2020, Fulton-Walker complained to Lisette Rivera-Resto, who had been promoted to Director of Claims and became her supervisor, that she had been excluded from meetings and internal processes, and that she was removed from projects that had previously been her responsibility after she filed this action in court.

Plaintiff Swift was hired by SEPTA on August 6, 2022 and has been SEPTA's only grade 40 Risk Management Administrator in the Risk Management Department since November 12, 2013. In this role, Swift identifies areas of financial risk for SEPTA, develops recommendations to address them, and assists in risk management programs. She also analyzes contractor insurance certificates and assists in annual insurance procurements. Swift claims that she was paid below the midpoint of her salary grade and that she was denied the opportunity to lead an internal training session in November 2019.

On November 20, 2019, she filed a complaint with the EEOC and PHRC raising race, gender, and age-based discrimination claims. PHRC sent her a right to sue notice on December 18, 2020, and the U.S. Department of Justice sent her a right to sue notice on October 28, 2021. She filed this lawsuit on December 27, 2021. Swift complained to Gino Benedetti, the Divisional Head or Assistant General Manager of the Risk Management Department, in June 2022 that Richard Graham, the Director of Worker's Compensation, had retaliated against her for filing discrimination complaints by "ignoring [] and disrespecting her, [and] excluding her from meetings and group text messages."

Fulton-Walker and Swift both allege that they were denied opportunities to interview for three positions: (1) a Claims Manager position posted on May 23, 2019 that required

eight or more years of experience handling personal injury claims through litigation; (2) Manager of Worker's Compensation and Federal Employers Liability Act ("FELA"), which was posted on August 23, 2019, was restricted to members of the Risk Management Department, and required six years of worker's compensation experience; and (3) the Manager of Intake Operations position, which was posted on September 5, 2019 and was restricted to applicants from the Video and Intake Department.

Effective December 11, 2022, SEPTA made a one-time special salary adjustment to increase the base salary of all employees whose salaries fell more than 10 percent below the midpoints of their salary grades to at least 90 percent of their midpoint.  As a result, Fulton-Walker received an 8.03 percent salary increase, and Swift received a 2.10 percent raise.

III

Plaintiffs allege that defendants violated the EPA by paying them less than their male comparators.  Defendant first argues that these claims are time-barred.  EPA claims "must be filed within two years of accrual of the cause of action, except in cases of willful violations, in which the limitations period is three years."  Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992).  See also 29 U.S.C. § 255(a).  Plaintiffs filed their complaint on December 27, 2021.  There

are no allegations of willfulness.  Accordingly, the court will only consider discriminatory conduct that occurred after December 27, 2019.  Plaintiffs' pay did not change between the filing of this complaint and SEPTA's salary adjustments on December 11, 2022.  As a result, the court rejects defendant's argument that plaintiffs' EPA claims are time-barred.

>The EPA states that:
>
>>No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]

29 U.S.C.A. § 206(d)(1).

To establish a prima facie case under the EPA, a plaintiff must show "that employees of opposite sex were paid differently for performing 'equal work'; that is, work of substantially equal skill, effort and responsibility, under similar working conditions."  E.E.O.C. v. State of Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir. 1989).  Employees perform equal work if their jobs have a "'common core' of tasks, i.e., whether a significant portion of the two jobs is identical."  Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156

(3d Cir. 1985).  The court then inquires whether any "differing or additional tasks make the work substantially different."  Id.

Fulton-Walker's claims under the EPA fail as a matter of law because she has not identified a male comparator who earns more than she for equal work.  Fulton-Walker named other potential comparators but without providing sufficient information about those employees' gender, pay, and job responsibilities to determine if they are proper comparators.  Although an evaluation of her pay in September 2018 revealed that she was paid 17 percent below the midpoint for her pay grade, while the male managers in her department were paid 2-4 percent less than the midpoint for their pay grade, they do not perform equal work.  Fulton-Walker is the only grade 41 Claims Manager responsible for handling property damage claims.  In contrast, the other claims managers in her department are in grade 42 and are responsible for handling personal injury claims which generally pose a higher risk to SEPTA and are generally more complex than property damage claims.

Swift also claims that she is paid significantly below her pay grade as compared to men employed by SEPTA but fails to identify a male comparator who earns more than she for equal work.  Instead, Swift identifies men whose positions, grades, and departments are different from hers.

Plaintiffs have failed to establish a prima facie case under the EPA.  Accordingly, the court will grant summary judgment in favor of defendants on plaintiffs' EPA claims.

Furthermore, even if plaintiffs had established their prima facie case, they could not prevail.  Under the EPA, once plaintiffs satisfy their prima facie burden, the burden shifts to the defendant to establish an affirmative defense.  29 U.S.C.A. § 206(d)(1).  For example, defendant can claim that the differences in pay are due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  Id.

SEPTA has provided undisputed evidence that it has abided by the compensation policies set forth in its Compensation Manual.  Fulton-Walker began her career at SEPTA as a grade 4 employee with an annual salary of $16,016, and she currently earns $100,178 due to promotions and annual merit-based salary increases, including recent increases in 2022 and 2015, that adhered to the policies in the Compensation Manual.  Although she was denied a salary adjustment in 2018, she had initiated a process outside the procedures outlined in the Compensation Manual.

Similarly, Swift began her career at SEPTA as a grade 13 employee earning $35,008 annually, and she is now a grade 40

employee earning $88,608 annually due to promotions and salary adjustments in accordance with the Compensation Manual. Accordingly, SEPTA's merit-based compensation policies defeat plaintiffs' EPA claims.

IV

Plaintiffs allege that SEPTA violated Title VII, the ADEA, and the PHRA by discriminating against them with respect to their compensation and by failing to promote or interview them for certain positions due to their race, sex, and age. For Title VII and ADEA claims, a plaintiff who has instituted state or local agency proceedings must file a charge within three hundred days of the alleged discriminatory employment practice. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 612(d)(1)(A). Under the PHRA, a plaintiff must file a state administrative complaint "within one hundred eighty days after the alleged act of discrimination." 43 Pa. Stat. Ann. § 959.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). These discrete acts can include "termination, failure to promote, denial of transfer, [] refusal to hire," or other easily identifiable employment decisions. Id. at 114. However, "[u]nder a continuing violation doctrine, discriminatory acts that are not individually actionable may be

aggregated to make out a hostile work environment claim" so long as at least one act falls within the statute of limitations. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013). This doctrine does not apply when there are gaps between incidents that "break[] the continuity necessary to establish a continuous pattern of unlawful action." Selvato v. SEPTA, 658 F. App'x 52, 55 (3d Cir. 2016) (non-precedential).

Fulton-Walker filed her claims with the EEOC and PHRC on December 9, 2019 and her complaint in this action on December 27, 2021. Her allegations prior to 2016 are conclusory statements that lack particularity and therefore will not be considered. Her two performance reviews in 2016 and 2017 are distinct, easily identifiable employment acts. As a result, the continuing violation doctrine will not apply. The court will only consider events that have occurred since February 12, 2019 for her Title VII and ADEA claims and since June 12, 2019 for her PHRA claims. These include her claims of continued pay discrimination and failure to promote.

Swift filed her claims with the EEOC and PHRC on November 20, 2019 and her complaint on December 27, 2021. As a result, the court will only consider events that have occurred since May 24, 2019 for her PHRA claims and January 24, 2019 for her Title VIII and ADEA claims. All of Swift's allegations

regarding pay discrimination and failure to promote are within the statute of limitations.

To establish a prima facie pay discrimination case under Title VII, the ADEA, or the PHRA, "a plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position (3) suffered an adverse employment action; and (4) similarly situated non-protected employees, i.e. "comparators," were treated more favorably."  Knox v. PPG Indus., Inc., No. CV 15-1434, 2018 WL 1334828, at *3 (W.D. Pa. Mar. 15, 2018).  See also Summy-Long, 715 F. App'x at 182–83; Anderson v. Consol. Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002).  Once a plaintiff has established her prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action.  See, e.g., Summy-Long, 715 F. App'x at 182.  If the defendant meets this burden, then the plaintiff must show that defendant's "explanation is a pretext for discrimination and not the real motivation for its actions." Id.

As discussed above, plaintiffs failed to identify comparators who were similarly situated and paid more favorably than they.  Both Fulton-Walker and Swift either identify employees whose positions, grades, and departments are different from theirs or do not provide sufficient information about other employees' jobs and demographics to determine whether they are

comparators.  Furthermore, SEPTA has established that Fulton-Walker and Swift had been promoted and awarded annual merit-based raises in accordance with its compensation policies.  As a result, the differences in salary were due to factors such as job responsibilities, experience, and work performance.  Accordingly, the court will grant summary judgment in favor of defendants on plaintiffs' pay discrimination claims under Title VII, the ADEA, and the PHRA.

Plaintiffs also assert that SEPTA failed to interview them for positions for which they were qualified.  To establish a prima facie case under Title VII, the ADEA, or the PHRA for a failure to interview or promote, again plaintiffs must establish that they are:  (1) members of a protected class; (2) qualified for the positions they sought; (3) were discharged from or denied the position; and (4) non-members of the protected class were treated more favorably. See, e.g., Chiaradonna v. Rosemont Coll., No. CIV. A. 06-CV-1015, 2008 WL 282253, at *3 (E.D. Pa. Jan. 31, 2008); Williams v. Rohm & Haas Co., 90 F. App'x 627, 628 (3d Cir. 2004); Fowle v. C & C Cola, a Div. of ITT-Cont'l Baking Co., 868 F.2d 59, 61 (3d Cir. 1989).  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  See, e.g., Williams v. Rohm & Haas Co., 90 F. App'x 627, 629 (3d Cir. 2004).  If the

defendant provides such a reason, then the burden shifts back to the plaintiff to show that defendant's non-discriminatory reason is pretextual.  Id.

Defendant maintains that Fulton-Walker did not experience adverse employment actions when SEPTA declined to interview her for the Manager of Worker's Compensation and FELA and Manager of Intake Operations positions because these are grade 41 positions, the same grade as her current job, and would therefore be lateral transfers.  Defendant does not raise this argument against Swift because she is currently a grade 40 employee.

The law regarding lateral transfers is unsettled.  On some occasions, our Court of Appeals has explained that a lateral transfer is an adverse employment action if it affects the employees "salary, benefits, or prestige" and that it is not sufficient that an employee's "title, office, reporting relationship and responsibilities" would have changed with a transfer.  See Swain v. City of Vineland, 457 F. App'x 107, 110 (3d Cir. 2012); Langley v. Merck & Co., 186 F. App'x 258, 260 (3d Cir. 2006).  On another occasion, our Court of Appeals has explained that there is a lateral transfer when the job responsibilities between two positions are not materially different.  Fallon v. Meissner, 66 F. App'x 348, 351 (3d Cir. 2003).  Even assuming that Fulton-Walker was not applying for

positions that are lateral transfers, she still would not prevail because she has not established other elements of her prima facie case.

Both Fulton-Walker and Swift, nonetheless, have failed to demonstrate that they were qualified for the positions they sought.  The first position, Claims Manager, required eight or more years of experience handling personal injury claims through litigation.  Neither of the plaintiffs met this qualification.  The second position, Manager of Worker's Compensation and FELA, was restricted to members of the Risk Management Department, and required six years of worker's compensation experience.  Fulton-Walker was not a member of the Risk Management Department and was therefore not qualified to apply for the position.  Although Swift had been a member of the department, she conceded that she lacked six years of worker's compensation experience when the job was posted.  She also lacked FELA experience.  The third position, Manager of Intake Operations, was restricted to applicants from the Video and Intake Department.  Neither Fulton-Walker nor Swift was a member of this department at the time the job was posted and therefore did not meet the necessary qualifications.

In addition, it is undisputed that the individuals selected for the positions--Cortney Nichols, Keeyan Pashanamei, and Lisa Valentin--met all the stated qualifications for their

respective positions.  SEPTA subjected all candidates to the same application process and criteria.  Accordingly, the court will grant summary judgment in favor of defendants on plaintiffs' failure to interview or promote claims under Title VII, the ADEA, and the PHRA.

V

Swift asserts retaliation claims under Title VII and the ADEA.  To establish a prima facie case, an employee must show:  "(1) [that she engaged in] protected employee activity;[2] (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015) (quotation marks omitted).  If the plaintiff establishes her prima facie case, the burden "shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action.  Id.  If defendants are successful in providing an affirmative defense, the burden shifts back to the plaintiffs "to demonstrate that the employer's proffered explanation was false, and that

---

2.  Protected activities include filing charges with the EEOC and PHRC.  See, e.g., Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).

retaliation was the real reason for the adverse employment action." Id. (quotation marks omitted).

Swift claims that defendants retaliated against her for filing this complaint. Under Title VII, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse," such that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation marks omitted) (citations omitted). Under the ADEA, an adverse employment action is one that affects the "compensation, terms, conditions, or privileges of employment." Swain v. City of Vineland, 457 F. App'x 107, 110 (3d Cir. 2012) (citing 29 U.S.C. § 623(a)(1)). "Minor complaints regarding staffing changes for training sessions" do not suffice. McClelland v. Dechert, LLP, No. CV 21-2702, 2022 WL 2109190, at *10 (E.D. Pa. June 10, 2022). Nor do "petty slights, minor annoyances, and [a] simple lack of good manners" rise to the level of materially adverse actions. Daniels, 776 F.3d at 196.

Swift alleges that Graham, Director of Worker's Compensation, was "ignoring [] and disrespecting her, excluding her from meetings and group text messages," and preventing her from leading a training session as retaliation for her filing this complaint. Swift does not expand on how and when she was

ignored, disrespected, or excluded from meetings or group text messages.  These are minor grievances that do not rise to materially adverse employment actions affecting Swift's "compensation, terms, conditions, or privileges of employment."

Furthermore, Swift cannot establish the third element of her prima facie case, that is that there is a causal connection between her protected activity--here, her complaints of discrimination--and SEPTA's adverse actions against her that are discussed above.  Causality can be established by "proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive."  Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (quotation marks omitted) (citations omitted).

As discussed above, Swift does not provide enough information for a finding of a causal connection between her protected activity, her November 20, 2019 complaint to the EEOC and PHRC, and her allegations that she was ignored, disrespected, or excluded from meetings or group texts.  In addition, she was given a consistent explanation for why she could not lead a training session in November 2019, namely that the slots had already been filled.  It is undisputed that these training sessions were already being led by other employees.

This is a legitimate and non-retaliatory reason to deny Swift the opportunity to lead a session. Beyond her conclusory allegations, Swift has provided no evidence that this reason is pretextual.

## VI

Plaintiffs Fulton-Walker and Swift have failed to establish prima facie cases for their claims under Title VII, the ADEA, the EPA, and the PHRA. Furthermore, there is no genuine dispute that SEPTA has adhered to its established non-discriminatory policies. Accordingly, the court will grant summary judgment in favor of SEPTA on all claims of both plaintiffs.